Ms. Messimer, the court understands that you were appointed in this case under the Criminal Justice Act to represent Mr. Allen and the court appreciates your willingness to accept the appointment. You may proceed with your argument. Thank you, Your Honors. May it please the court and counsel. This case should be reversed both because the officer who detained Mr. Allen searched and searched the vehicle did so in violation of the Fourth Amendment, which requires a suppression of the firearm that was later found, and because the district court inappropriately limited Mr. Allen's defense at trial, both by refusing his requested instructions and by excluding evidence that supported his defense. Beginning with the suppression argument, to take things chronologically, there was no reasonable suspicion that justified the seizure and search of the vehicle. First off, there was no probable cause for an open container violation. That was, in fact, the violation that the officer relied upon when he was making the stop. The arresting officer told Mr. Allen specifically that that was the reason he was detained, and he told the assisting officer that was the basis for the search, that the assisting officer was to look for any place in the car that could have a one-ounce shooter. It's also in the police report that the arresting officer authored that that was the basis for the search. But, in fact, there is no probable cause for an open container search of that car because it's not illegal to have open containers in a car that's parked privately. The car has to be driving on a public road or highway, and here, of course, it was not. It's a quite plain statute. It was not a reasonable mistake for the officer to make to think that there was a basis to search it for open containers. The government doesn't defend that basis for the stop, and the district court did not rely upon that in making its ruling denying the motion to suppress either. So that leaves us with a justification for the search and seizure based on this officer's what I believe is a hunch that something fishy was going on here. But when you look at the factors the officer cites, they're simply not sufficient to generate reasonable suspicion. All the factors cited by the officer are things that are consistent with wholly innocent conduct that anyone could be doing. To go through that list of what the officer pointed to in the suppression hearing and at trial as justifying this search and seizure of the vehicle was the fact that Mr. Allen turned around and walked away from the pickup truck and the people he was speaking to and got in this car. So that's number one, that he just walked away. And the second thing was that Mr. Allen leaned forward in the vehicle towards the dash. Those were the primary justifications for the officer to park his car and get out and check on these people. But those simply aren't enough to create reasonable suspicion under those circumstances. This is obviously a fact-based inquiry, but here this case is analogous to stops where the court has suppressed evidence, like United States v. Jones from 2010 or United States v. Lowry from 2019. The officer confirmed it was cold out, so there's nothing strange about Mr. Allen walking briskly or wearing a coat. The officer testified there wasn't anything about the way Mr. Allen walked or he didn't touch himself or seem to be clutching anything. The officer didn't testify that he saw any hand-to-hand deal. He just saw Mr. Allen talking to some people and then walk away. In terms of what has been labeled furtive movements in the car, that's simply Mr. Allen leaning forward in a car. That's not enough to be suspicious to generate a detention putting someone in handcuffs and then searching an entire vehicle. So, on the totality, there just isn't enough here to justify the detention. And Mr. Allen was detained about two minutes into this stop, and then the vehicle was searched very shortly afterwards. It was around 12 minutes into the stop when the officers went back and spoke to Brittany Pinkney, and she told the officers that David Allen had the gun in the car, and she told the officers where the gun was. So because this detention and the search were illegal from the outset, which started about two minutes in, this was an illegal extension of the stop, and it was illegal for the officers to then hold Mr. Allen and further question these two individuals.  Is it essentially a Terry stop? Yes. I would say that is all the government is arguing it is at this point, and that's what the district court was relying on, too. So, the level of reasonable suspicion that's required for a Terry stop is pretty low. Why isn't the furtive motions, the location, going from the truck to the car, why isn't in the totality, isn't that enough to get over the reasonable suspicion? You don't need probable cause, obviously, for a Terry stop. Why isn't that enough? It's not enough because when you look at these factors, there's something any innocent person could do. We always say, just because one factor in isolation may be innocent, you still get to look at the totality of it. I agree, but I think even here looking at the totality, there's not enough. When there's not any hand-to-hand deal observed, I think just being in somewhere that's known to be high crime, the court has recognized that's not enough, that has some negligible value unless there's specific facts tying this person to a location, and this officer didn't know Mr. Allen before this stop. He had no reason to think that this was a drug deal versus just two friends talking outside. And even talking to a person who does drugs, that's not illegal, too, and the court has said in other cases that's not enough to generate, to justify a stop and a seizure. Isn't the key the so-called furtive movements? I do think that's what the court tends to rely on when it affirms these kind of searches. And I think that's problematic. I think the court needs to be very careful about what it categorizes as furtive versus not. Simply leaning over in a car. Well, is that the sum total of the testimony is leaning over the car or leaning? I thought it was more of, you know, as if placing something in the, you know, which would indicate hand movements and that sort of thing. I believe it's the page 15 of the suppression transcript when this was discussed. And as I recall, he testifies that he was leaning forward toward the dash or the glove compartment. The officer testified that when he observed this, the officer was still in his car. He didn't observe any furtive movements after he got out of his car. And when the officer was in his car, his only vantage point was he testified he could only see basically from the waist up. So he couldn't see what hands were doing or anything like that. He could just see the bending motion of the upper body. So based on that testimony, no, I don't think that's enough to call this, to say this is a sneaky movement, simply bending in your car. And I do think the court needs to be careful about, you know, assessing each furtive movement individually. Because sometimes, yes, in other cases where there's an officer testifying, like I saw somebody kind of lean up and stick something behind and sit on it. You know, if there's something more specific when an officer is approaching the car, I think in those cases that could be enough to justify a search and a seizure. But here, I just don't think that seeing someone lean forward in a car, which that's the testimony, I don't think that that should be enough to call this suspicious and justify getting somebody out of their car in a private area to search them. Unless the court has any more questions on that issue, I'll move to the trial issues here. So Mr. Allen's defense in this case, it was that Ms. Pinkney, the other person in the car, was responsible for this gun. That was his whole theory of the case the entire time. It's clear the officer picked him as the owner and not Ms. Pinkney, and he was shifting the blame to her. And as discussed in the video, which was submitted in the suppression hearing, it's Brittany Pinkney that said this is David Allen's gun, and that's why the whole case went towards him. Brittany Pinkney was listed as a witness by the government. There were a lot of pretrial fights about what evidence would come in through her or not. And it was only midway through trial that the government pulled her as a witness. So in my opening statement, I told the jury, you're going to hear from Brittany Pinkney that she's going to say this gun is David Allen's. So that was how this whole case started off. And then she was kind of the elephant in the room for the whole trial. Lots of discussion about her came in through all the officers, and there were specific hearsay statements that were admitted through the officers regarding things that she had said about how intoxicated she was, about whether she was the one who told where the gun was, and things such as that. So her credibility really was an issue based on how this case played out and about how the officers testified to things she had said. Another thing an officer testified was that she had called him and said she was lying to the grand jury. So there were lots of hearsay statements admitted about her that gave rise to impeaching her and showing her demeanor. Can you zero in a little bit more than that? You say there were lots of hearsay statements admitted. The fact that she admitted lying to the grand jury isn't really a hearsay statement. What exactly, I understand you said in your opening statement that she was going to say something that apparently she didn't say, but what exactly came in as a hearsay statement that was the subject of proper impeachment? One thing is through Officer Holton, the arresting officer, he testified that she had told him she only had one shot, and that was an issue for the defense too because part of our argument was that she had motivated to place this gun on David Allen because she could have been charged with a DUI or things of that nature. So how much she drank was an issue in the case, and that's something that Officer Holton testified to some hearsay about. Officer Holton also testified that Brittany Pinkney told him where the gun was, and he went and found it. Again, the assisting officer also testified that it was Pinkney that told Holton where the gun was. What's the hearsay statement there? That shows why the officers went to look for the gun, I guess, but what's the hearsay from her that's offered for the truth of the matter asserted or received for the truth of the matter asserted? That she's the one who identified where the gun was. I believe that's for the truth, that she's the one who said that and knew where it was. You mean, so the relevant evidence is that she knew where the gun was located? Yes. Why would you want to impeach that? I mean, that helps you. The impeachment had more to do with her motive for shifting blame to David Allen, and I acknowledge there was not a direct hearsay statement admitted by her on that point, but I do think that her credibility did come in. Her credibility became an issue through the evidence generally and through these other specific statements she made, even though it was not specifically admitted that Brittany Allen said, this is David Allen's gun. Yeah, I mean, if that had come in, then obviously she's implicating Allen and you'd have a strong reason to try to impeach that, but apparently that didn't come in as hearsay. That specific statement did not come in as hearsay, you're correct. The brief kind of claims that it did through Officer Buck, but I don't think the transcript bears that out. I believe Officer Buck, I don't believe he admitted a specific hearsay statement. It was more of an implication that he spoke with her multiple times. She denied that it was hers. That was the implication of his testimony. All right, getting down to the end of your time, is there anything you want to say about the instructions? Yes, Your Honors. This is another one where I think this case was a close call because there was a lot of the things they said made David Allen suspicious were the same things that would make Brittany Pinckney suspicious, and her lack of presence at the trial was also a big red flag and created some reasonable doubt. So this was a close case in terms of whether there was reasonable doubt, and part of the statements that were admitted by Mr. Allen were that he admitted that she handed him this gun and he had it and he had hit it for her, and under the circumstances, I do believe that would justify giving an accident or mistake instruction because it wasn't something he did purposefully or knowingly, and that was a big thing for his defense because we had to explain away this statement in a way that would fit with what the law is. And I don't think anyone disputes that, obviously, Model Instruction 7.03 is an accurate statement of law. It's also stated that language is in an Eighth Circuit case as an accurate statement of law. And so when it's accurate, I do think the defense should get it. The prosecution has a lot of rhetorical tools to use from the possession instruction, and the defense, this was our main claim, is that he didn't have the intention to possess this because it was an accident or mistake when it was thrust on him at this last moment, and I didn't have a rhetorical tool in the instructions to tie this back to to say that an accident just isn't enough for possession. So when that's our main theory, that's what I've got. The only thing I could really use to explain away his statement and try to fit it to what the law is, I do think it's extremely important that the court gives those instructions when they're accurate statements of the law. So under the circumstances... What's the exact instruction you're focused on now, the part in 7.03 about ignorance, mistake, or accident? Yes, an act is done knowingly if the defendant is aware of an act and does not act through ignorance, mistake, or accident. And the judge declined that and just gave no instruction on the meaning of knowingly. That's correct. All right, would you care to save the balance for rebuttal? Yes, for what it's worth. Thank you. All right, very well. You may. Mr. Holscher, we'll hear from you. Thank you, Your Honor. My name is Jonathan Holscher. I represent the appellee in this case, the United States government, for the Southern District of Iowa. And I'll address the arguments in the same order that Ms. Messimer approached her argument. And I think it's important for this court that we take a step back and we look at the suppression. We don't miss the forest for the trees here. When Officer Holton arrived on scene, he already had probable cause to initiate a traffic stop of the Altima, regardless of anything that the defendant did in this case. The Altima was parked over a sidewalk, was in a driveway, and was parked over a sidewalk. That's a violation of Iowa Code Section 321.358, Subsection 1, as well as a violation of the Des Moines City Ordinance prohibiting parking over a sidewalk. So already, Officer Holton has reasonable suspicion in the improbable cause to detain the driver, to detain the passenger, to inquire with them about what their plans for the evening are, what their direction of travel is, and to check for any sort of outstanding warrants and to check to see if they are valid drivers. Furthermore, he has the ability to then, he has the authority to... You're saying any time somebody in Des Moines stops in a driveway and the car is jutting out over the sidewalk, a police officer can do all of that? It's all within the realms of a normal traffic stop, yes, Your Honor. Now, whether or not an officer wants to choose to do that as part of their time, I think their time could be better used in other ways, but the authority under the statutes cited would give the officer the authority to do those things in an otherwise normal traffic stop. And as I said, that's before we even look into anything that the defendant himself did. As has been pointed out, as soon as the officer arrived on scene, he observed the defendant move quickly from the truck that he was interacting with and go straight into the passenger side of the vehicle and then immediately bend over at his waist inside the vehicle. Now, if we add on to that the fact that he is in a high-crime area, the fact that the car is parked in front of a house that is being under investigation for possible drug activity, and also the time of night, it's approximately 1248 in the morning, all of this builds together. Now, yes, as Ms. Messimer pointed out, that is otherwise innocent activity, but otherwise innocent activity, when added together, can give and can create reasonable suspicion for officers to continue to investigate. Furthermore, as Officer Holton is approaching the vehicle, the defendant and the driver both stick their hands outside of the vehicle to show their hands. He said, again, that is inconsistent behavior, that is unusual behavior. And then also, while the officer is interacting with the defendant, several three other people approach on scene. Now, let's remember, at this point, Officer Holton's backup is yet to arrive, and so right now he's outnumbered five to one. He asked the people to identify themselves. He recognizes one of the names as someone who is, again, under investigation for narcotics, and as the officer pointed out, he's a member of the special enforcement team and patrols the area regularly and is presented with this information more often and is experienced in dealing with these investigations in this situation. So then at this point, again, pursuant to the valid traffic stop that we have, he orders both the passenger and the driver to exit the vehicle and then continue on. So now, when looking at this, the search of the vehicle... What's the amount of time that the stop extended beyond the traffic stop? I would say, Your Honor, we have not gone, and at no point did we go beyond the scope of the traffic stop here, because everything that the officer Holton did... You had enough just on the sidewalk violation? The averted movement, it justifies continuing on with the stop, and it adds to it. Well, that was my question. How long was the stop continued beyond the traffic stop? And you said it wasn't. And I said... I don't want to repeat myself, but... No, I understand your point, Your Honor. Sorry. I'm just trying to understand. Are you saying that there was no extension of the stop beyond the sidewalk violation traffic stop, or there was, and if so, how long? I would say, Your Honor, yeah, I would say approximately 2 1⁄2 minutes. That would be the time that was necessary for the officers to conduct the protective sweep of the vehicle. And I believe that took about approximately 2 1⁄2 minutes. So when he is detained and removed from the vehicle, and also the passenger is as well, that's all part of the valid traffic stop. Now, when you add in the averted movements of the defendant, coupled with everything else that's going on with the officer at the time, when they conduct the protective sweep of the vehicle, that would essentially be, yes, the extension of the time. And that is reasonable, that was reasonable under the circumstances, given the averted movements, as Ms. Messimer, as the record points out, the officer bent over at, witnessed the defendant bending over at his waist and bending down within the feet, center console compartment of the vehicle. As he testified, based on his experience, this is consistent with someone trying to conceal something, or concealing either potential handgun, potential drugs. That is just, it's furtive movement behavior. Now, yes, as Ms. Messimer pointed out, that is otherwise lawful behavior, but when we take it all together and we look at everything that's going on, it does create suspicion, it does create a reason to go beyond the traffic stop that we have. And it's reasonable for the officers to do so. Now, the government in its brief did not address the issue with regards to the open container violation. Reasonably, because the court does not need to go there because the defendant has no, it's the government's position that the defendant does not have the requisite standing to challenge the search of the vehicle. And so the issue that the court would be just to focus on would be the extension of the stop. If the court would like, I can address a little further the issue with regards to the open container violation, or we can move on to the next issue of the trial itself. Well, it's your argument, so you may choose what you want to address. I'll move on to the trial itself then, Your Honor. As the court in the government's brief pointed out, there were no specific statements that were needed to be elicited, that were elicited by Ms. Pickney such that the 806 hearsay issues needed to be brought in. The court has to review this issue on abuse of discretion, and reviewing the record, Judge Ebbinger did not abuse her discretion in not allowing this testimony to come in. There was the, with those, the argument was able to be made. Mr. Messimer pointed out multiple times throughout the trial that there was, that Ms. Pickney had all these other potential crimes that she was investigated for, but was not, for whatever reason, charged with or investigated. There is a possible OWI investigation that could have been conducted. Ms. Pickney had a barred status, barred driver's license, and so all of these give the implication that Ms. Messimer has got to during the trial, and is that Ms. Pickney had a reason to deflect blame, and to keep her essentially lucky streak going by not getting arrested, by not getting charged with or investigated for those crimes. So, there was nothing that was prevented Ms. Messimer from making the argument, and presenting the defense, and there was no need for these statements to come in, in order to attack the credibility of Ms. Pickney. Furthermore, if the defense also has the ability, if they so chose, to call Ms. Pickney if they wanted to, to elicit these statements, to elicit her testimony if they wanted to in their case in chief, and they chose not to do so. And moving on to the jury instruction issue, as this court knows and is aware, the accidental instruction was rejected by the court, and properly so because of the way the statute reads. The statute reads, defendant must knowingly possess the firearm. And so, if the defendant didn't knowingly possess the firearm, then he's not guilty. And so, as this court found, that is the safety valve that's necessary, and the accidental possession instruction is not necessary to be given at the trial, because it's not a correct statement of the law. And I would also submit that the record itself would not support, as a whole, would not support an instruction for the accidental instruction. In the D.C. Circuit case, the U.S. v. Mason, in that case, the court noted even that it was a close call, even in that case, for that instruction to be submitted, that the innocent or transitory instruction to be submitted. And I think here, we have far less facts to support any sort of accidental instruction. The defendant himself admitted that he knew the gun was there, that he possessed it, his DNA would be on it. The gun was found in the passenger component of the vehicle. It was found with the gun pointing towards him, with the handle pointing towards him, and in such a place that the driver would not have been able to reach over and exercise the possession. So I would argue that the facts, even if this instruction could have been given, and even if the court was incorrect in not allowing it, the facts simply don't support it to come in. And I believe I have sufficiently addressed the arguments of Ms. Messmer, so if the court has any additional questions for me right now, otherwise I will conclude my argument. Very well. Thank you for your argument. Since Mr. Holscher gave a little time back, we'll give Ms. Messmer two minutes for rebuttal. Please set the clock and you may proceed. Thank you for your generosity with the time, Your Honor. One factual point I wanted to respond to for the government is they say that this gun was on the passenger side and Ms. Pinckney wasn't there. Well, Officer Buck testified at trial that Ms. Pinckney admitted to him that she had, in fact, been on the passenger side of the car earlier. So in terms of who could have put that gun there, it was an issue that was at play because she had access to that area in the car as well. And going back to the accidental instruction, if we look at the instructions on possession, the government gets to argue, oh, possession can be constructive or it can be joint, it doesn't have to be direct physical control, it doesn't have to be actual. The defense should be able to have a rhetorical tool in that instruction as well to argue my theory of the case, which was that this was not intentional because it was an accident or a mistake. To prevent the defense from having that language that came down to the core of the case and the core of his defense here, that is an abuse of discretion. It tips the scales here so that the instructions favor the prosecution to the detriment of the defense. You could still argue the point, I assume, right? You still argued that he didn't know he possessed it because it was just an accident or a mistake? I believe how... But you could have, couldn't you? I believe how I argued it was that it wasn't knowing... I had to stick to the way the court had defined knowing, if I recall, and the court was very careful about this because the court had admonished me multiple times. The court was concerned that my argument was jury nullification because the court has said even brief possession can be enough. I don't believe that that's a... My only point is that if the judge didn't define knowingly, but that the instruction you wanted is the correct statement of the law under our cases, you could have argued the point even without the instruction. You could have said you shouldn't convict him for knowing possession because if he had this gun at all, it was through ignorance, mistake, or accident. And I don't think the absence of the instruction precludes you from making the argument. Don't you agree with that, or am I missing something? I think that the way this played out and the way the district court instructed me... I just did a quick search for the word accident in my closing and I didn't find it. The court had admonished me in my opening statement that she thought I was basically getting close to jury nullification by arguing he only had it for a moment and that wasn't enough to be knowing, basically. And so how I remember it is that the court kind of drew some lines for me, and I don't think that I then did call it accidental because I was afraid I would draw an objection and run into this nullification issue because the court thought if I was saying he only had it for a minute, that would be nullification because if you have it for only a second, that could still be enough to be possession. So again, here I think that's why it's important to have the instructions so I can tie back to the instructions and I'm not leaving the jury to guess because I can't accurately say what the law is, and the jury instructions don't include what the law actually is. All right, very well. Thank you for your argument. Thank you to both counsel. The case is submitted.